UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

BUCKINGHAM PROPERTIES, LLC, and
MASSACHUSETTS BAY INSURANCE
COMPANY,

                        Plaintiffs,

-vs-

ATLANTIC CASUALTY INSURANCE
COMPANY,

                        Defendant.
_____

DECISION and ORDER

6:17-CV-6656-CJS-MWP

INTRODUCTION

This is an action seeking a declaratory judgment concerning the parties' rights under an insurance policy. Now before the Court are cross-motions for summary judgment. Defendant's application is granted, and this action is dismissed.

BACKGROUND

The reader is presumed to be familiar with the record on summary judgment, accordingly the Court will only set forth the facts relevant to its decision. In or about July 2015, Buckingham Properties, LLC ("Buckingham") hired Christopher Haitz d/b/a Real Renovations ("Haitz") to perform roofing work on a building owned by Buckingham in Rochester, New York. As part of that agreement, Haitz added Buckingham as an additional insured on a Commercial General Liability Insurance Policy ("the policy") issued to Haitz by Atlantic Casualty Insurance Company ("Atlantic"). Some time later in July 2015, one of Haitz's employees, Kristopher Hanson ("Hanson"), claimed that he was injured in a fall from the roof. Hanson subsequently commenced an action against Buckingham in New York State Supreme Court, Genesee County, asserting *inter alia*

1

claims under New York Labor Law § § 240(1) & 241(6).  Buckingham notified Atlantic of the lawsuit and requested that Atlantic defend and indemnify Buckingham.  However, Atlantic disclaimed any duty to defend or indemnify Buckingham pursuant to several provisions of the policy.  Buckingham's own insurer, Massachusetts Bay, then undertook to defend Buckingham in the state-court action.

On June 23, 2016, while the state-court action was still pending, Buckingham and Massachusetts Bay commenced the subject diversity action seeking a declaration that, under the policy and New York State law, Atlantic was required to defend and indemnify Buckingham in the state-court action.

On or about October 27, 2017, Buckingham and Hanson settled the state-court action.  The settlement amount ($950,000.00) and the costs of defending the state-court action were paid entirely by Massachusetts Bay.  Buckingham paid nothing toward the settlement or the defense of the action.  Buckingham subsequently assigned "all" of its rights as an additional insured under the Atlantic policy to Massachusetts Bay.[1]

On June 13, 2019, Atlantic filed the subject motion for summary judgment (Docket No. [#55]).  Atlantic primarily maintains that it had no duty to defend or indemnify Buckingham under the policy's "employee exclusion."   In this regard, the policy contains an exclusion entitled "Exclusion of Injury to Employees, Contractors and Employees of Contractors," which states in pertinent part:

> This insurance does not apply to: (i) "bodily injury" to any "employee" of any insured arising out of or in the course of: (a) Employment by any insured; or (b) Performing duties related to the conduct of any insured's business;  or (ii) "bodily injury" to any "contractor" for which any insured may become liable in any capacity.

---

[1] Cross-movants' Memo of Law [#71] at p. 7.

Docket No. [#55-6] at p. 60. Atlantic contends that this exclusion applies since Hanson was an employee of Haitz, who was an insured under the policy. Atlantic also maintains that there is no actual case or controversy involving Buckingham in this action, since Buckingham did not pay any money out of its own pocket to defend or settle the underlying state-court action.

On September 30, 2019, Buckingham and Massachusetts Bay filed the subject cross-motion for summary judgment (Docket No. [#74]). Cross-movants primarily contend that the "employee exclusion" does not apply to Buckingham, due to the policy's "Separation of Insureds" provision, which states in pertinent part:

> **Separation of Insureds.** . . . [T]his insurance applies: a. As if each Named Insured were the only Named Insured; and b. Separately to each insured against whom claim is made or "suit" is brought.

Docket No. [#55-6] at p. 38. Cross-movants essentially contend that this "separation of insureds" provision negates the "any insured" language in the "employee exclusion," such that the latter provision applies only to an insured who actually employs the injured employee, and not to other insureds.[2] Cross-movants further maintain that a justiciable case or controversy exists with regard to Buckingham, since, for example, "Buckingham has been denied the defense and indemnity it was owed" under the policy, and since a determination here in Buckingham's favor "has real potential to materially affect Buckingham's loss history and general liability premium going forward."[3]

On December 5, 2019, counsel for the parties appeared before the undersigned

---

[2] See, Cross-movants' Memo of Law at p. 1 ("The [Atlantic] Policy's "Employee" exclusion, when applied consistent with that Policy's "Separation of Insureds" provision, does not bar coverage for claims, such as the underlying claim, arising from injuries suffered by a party not employed by the party seeking coverage.").
[3] Cross-movants' Memo of Law at p. 35.

3

for oral argument. The Court has considered the parties' submissions and the arguments of counsel.

## DISCUSSION

Rule 56

The parties have cross-moved for summary judgment pursuant to Fed. R. Civ. P. 56. Summary judgment may not be granted unless "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). "[T]he movant must make a *prima facie* showing that the standard for obtaining summary judgment has been satisfied." 11 MOORE'S FEDERAL PRACTICE, § 56.11[1][a] (Matthew Bender 3d ed.). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy this burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." *Gummo v. Village of Depew*, 75 F.3d 98, 107 (2d Cir.1996) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)), *cert denied*, 517 U.S. 1190 (1996).

The burden then shifts to the non-moving party to demonstrate "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To do this, the non-moving party must present evidence sufficient to support a jury verdict in its favor. *Anderson*, 477 U.S. at 249. The underlying facts contained in affidavits, attached exhibits, and depositions, must be viewed in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.,* 369

U.S. 654, 655, 82 S.Ct. 993 (1962). Summary judgment is appropriate only where, "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir.1993).

<u>Buckingham's Claim is Moot Since it Conveyed to Massachusetts Bay All of its Rights Under the Policy</u>

Atlantic maintains that there is no justiciable case or controversy between Atlantic and Buckingham, and that the Court should therefore dismiss Buckingham from the action. In this regard, Atlantic contends Massachusetts Bay bore the entire cost of defending and settling the state-court action, and that, "[a]s a result, Buckingham does not have any damages and, therefore, does not have a justiciable claim." Buckingham disputes that legal argument. Nevertheless, Buckingham expressly admits that it conveyed all of its rights involving this matter to Massachusetts Bay. In particular, Buckingham admits that,

> [a]fter the underlying action was settled, Buckingham assigned to [Massachusetts Bay] all of Buckingham's rights, claims and causes of action which Buckingham may have against any person or entity liable or responsible for the bodily injury claim by Hanson the payment of $950,000, or accompanying amounts or legal rights of recovery Buckingham has including but not limited to rights as an additional insured under the [Atlantic] policy issued to Haitz.

Cross-Movants' Memo of Law [#71] at p. 7 (internal quotation marks omitted).[4]

The Second Circuit has described the concept of "standing" and the related concept of "mootness" as follows:

---

[4] The state court action was still pending when Plaintiffs filed the Amended Complaint [#10]. Subsequently, though, the state-court action settled and Buckingham assigned all of its rights to Massachusetts Bay. *See,* Assignment and Subrogation, Docket No. [#71-12].

5

> It is a commonplace that jurisdiction of federal courts is limited to cases and controversies. Hence, litigants are required to demonstrate a "personal stake" or "legally cognizable interest in the outcome" of their case. While the standing doctrine evaluates this personal stake as of the outset of the litigation, the mootness doctrine ensures that the litigant's interest in the outcome continues to exist throughout the life of the lawsuit, including the pendency of the appeal. Accordingly, a case that is "live" at the outset may become moot when it becomes impossible for the courts, through the exercise of their remedial powers, to do anything to redress the injury.

*Cook v. Colgate Univ.*, 992 F.2d 17, 19 (2d Cir. 1993) (citations and internal quotation marks omitted). "A case that was justiciable when litigation commenced can become moot if the underlying controversy 'ceases to exist,'" such as when a party assigns its rights to another during the pendency of an action. *City Ctr. W., LP v. Am. Modern Home Ins. Co.*, 749 F.3d 912, 913 (10th Cir. 2014) ("This appeal ceased to have any practical importance, and therefore became moot, when City Center reassigned its claim to Summit Bank.").

In this action, it appears that Buckingham had standing when this action was commenced. Subsequently, though, the state-court action was settled, and then Buckingham assigned all its rights involving the policy to Massachusetts Bay. Consequently, Massachusetts Bay now stands in the shoes of Buckingham relative to the subject insurance policy. Therefore, Buckingham presently lacks an interest in the outcome of this action. *See*, *Matter of Motors Liquidation Co.*, 689 F. App'x 95, 96 (2d Cir.) ("Our precedents are clear that a transferor is no longer a proper party to the litigation. An unequivocal and complete assignment extinguishes the assignor's rights against the obligor and leaves the assignor without standing to sue the obligor.") (citations omitted), *cert. denied sub nom. Phillips v. Gen. Motors LLC,* 138 S. Ct. 510, 199 L. Ed.

2d 387 (2017).[5] Buckingham is therefore dismissed from the action. However, as will be discussed below, even assuming *arguendo* that Buckingham's interest in this action was not moot the Court would nevertheless grant summary judgment against Buckingham for the same reasons that it is granting summary judgment against Massachusetts Bay.

<u>Massachusetts Bay's Claims Are Barred by the
Policy's Employee Exclusion</u>

As discussed earlier Atlantic maintains that it is entitled to judgment based on the policy's "employee exclusion." The applicable legal principles are clear:

> Both parties agree that New York law applies in this dispute. In New York, "[t]he law governing the interpretation of exclusionary clauses in insurance policies is highly favorable to insureds." *Beazley Ins. Co., Inc. v. ACE Am. Ins. Co.*, 880 F.3d 64, 68 (2d Cir. 2018) (quoting *Pioneer Tower Owners Ass'n v. State Farm Fire & Cas. Co.*, 12 N.Y.3d 302, 306, 880 N.Y.S.2d 885, 908 N.E.2d 875 (2009)). We may enforce a policy exclusion only when it has "a definite and precise meaning, unattended by danger of misconception ... and concerning which there is no reasonable basis for a difference of opinion." *Id.* at 68–69 (quoting *Pioneer Tower*, 12 N.Y.3d at 307, 880 N.Y.S.2d 885, 908 N.E.2d 875). "[W]henever an insurer wishes to exclude certain coverage from its policy obligations, it must do so in clear and unmistakable language. Any such exclusions or exceptions from policy coverage must be specific and clear in order to be enforced." *Id.* (quoting *Pioneer Tower*, 12 N.Y.3d at 307, 880 N.Y.S.2d 885, 908 N.E.2d 875). Thus, our first step in interpreting whether an insured's loss falls within a policy exclusion is to "examine whether there is a 'reasonable basis for a difference of opinion as to the meaning of the policy.'" *Fendi Adele*, 823 F.3d at 150 *39 (internal quotation marks omitted) (quoting *Fed. Ins. Co. v. Int'l*

---

[5] *See also*, 17 Couch on Ins. § 241:18 ("Where an assignment transfers all interest of the assignor in an insurance policy to the assignee, the assignor no longer has any standing to sue on the policy in his or her own name for his or her own benefit."); *Zurich Am. Ins. Co. v. Wausau Bus. Ins. Co.*, No. 16-CV-3643 (VSB), 2018 WL 4684112, at *5 (S.D.N.Y. Sept. 28, 2018) ("An assignment is a transfer or setting over of property, or of some right or interest therein, from one person to another, and unless in some way qualified, it is properly the transfer of one whole interest in an estate, or chattel, or other thing. . . . Additionally, assignment of the rights to a claim deprives the assignor of standing to bring any such claim."), appeal withdrawn, No. 18-3244, 2018 WL 7140572 (2d Cir. Nov. 28, 2018); *Lehr Assocs. Consulting Engineers, LLP v. Daikin AC (Americas) Inc.*, 133 A.D.3d 533, 533, 20 N.Y.S.3d 67, 68 (N.Y. App. Div. 2015) ("Plaintiff has no standing to maintain this suit, because after it assigned its claims against defendants to nonparty Timber Falls Foundation, it was no longer the real party in interest.")

7

> *Bus. Machs. Corp.*, 18 N.Y.3d 642, 646, 942 N.Y.S.2d 432, 965 N.E.2d 934 (2012) ).
>
> ***
>
> We must "read[ ] the contract as a whole," *Ellington v. EMI Music, Inc.*, 24 N.Y.3d 239, 244, 997 N.Y.S.2d 339, 21 N.E.3d 1000 (2014), and do so by placing words and phrases in their proper contexts, *see Parks Real Estate Purchasing Grp. v. St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 44 (2d Cir. 2006).

*7001 E. 71st St., LLC v. Cont'l Cas. Co.*, 739 F. App'x 37, 38–39 (2d Cir. 2018).

New York law further instructs that when reading a contract as a whole, courts must "avoid any interpretation that would render a contractual provision without force and effect." *King Fook Jewellery Grp. Ltd. v. Jacob & Co. Watches Inc.*, No. 14 CIV. 742 (ER), 2019 WL 1146461, at *6 (S.D.N.Y. Mar. 13, 2019); *see also, Crede CG III, Ltd. v. 22nd Century Grp., Inc.*, No. 16 CIV. 3103 (KPF), 2019 WL 652592, at *3 (S.D.N.Y. Feb. 15, 2019) ("Under New York law, which governs the parties' relationship here under the agreements at issue, it is well settled that a contract must be read as a whole to give effect and meaning to every term and in a way that reconciles all of its provisions, if possible.") (citations and internal quotation marks omitted).

The dispute here concerns the interplay between the policy's "employee exclusion" and its "separation of insureds" provision. A review of New York caselaw indicates that this is a frequently-litigated issue. As already mentioned, Massachusetts Bay contends that the latter provision essentially negates the "any insured" language in the employee exclusion and causes the "employee exclusion" to apply only to the insured who employed the injured worker. For support, Massachusetts Bay relies on cases including *Ostrowski v. Am. Safety Indem. Co.*, No. 07–CV–3977, 2010 WL 3924679 at *6 (E.D.N.Y. Sept. 30, 2010) and *Shelby Realty LLC v. Nat'l Sur. Corp.*, 06 Civ. 3260, 2007 WL

1180651 at *4 (S.D.N.Y. Apr. 11, 2007).

However, Atlantic relies on more-recent decisions which have generally held that similarly-worded policies cannot be interpreted in the manner urged by Massachusetts Bay, since doing so would effectively nullify the "any insured" language in the employee exclusion. For example, Atlantic cites *Nautilus Ins. Co. v. Barfield Realty Corp.*, 2012 WL 4889280 at *10 (S.D.N.Y. Oct. 16, 2012), wherein the court rejected the same argument asserted by Massachusetts Bay here, stating that, "where, as here, the language of the [employee] exclusion refers to "any insured" it should be read to supersede the separation of insureds language in order both to effectuate its plain meaning, and to avoid rendering the clause a nullity."[6]

The Court is persuaded that Atlantic's position on this point more accurately reflects the law in New York. *See, e.g., Barba v. Allianz Global Risks US Insurance Co.*, 16 Civ. 2673 (PAE), 2016 WL 6236324 at *8 ("[T]he overwhelming majority of courts to consider such an exclusion have held it unambiguous, and binding, even in the presence of a Separation of Insureds clause."); *see also, DRK, LLC v. Burlington Ins. Co.*, 74 A.D.3d 693, 694, 905 N.Y.S.2d 58, 59–60 (1st Dept. 2010) ("The 'Exclusion–Cross Liability' endorsement states that the subject insurance does not apply to any actual or alleged bodily injury to an employee of 'any insured.' This Court has held that such language unambiguously excludes coverage even where the injured party was an employee of another insured under the policy. Neither the general 'Separation of Insureds' provision

---

[6] *See also, Endurance American Specialty Ins. Co. v. Century Surety Co.*, No. 14-4184-cv, 630 Fed.Appx. 6 (2d Cir. Nov. 4, 2015) (Wherein the Second Circuit, interpreting New York law, noted with apparent approval that with regard to insurance policies having "employee exclusions" relating to "any insured," "courts have held that the insurance policy precludes coverage of injuries to any employee, whether employed by the insured seeking coverage or not, because to do otherwise would render the unambiguous language referring to any insured "a nullity." *Nautilus Ins. Co. v. Barfield Realty Corp.*, 11–cv–7425 (JPO), 2012 WL 4889280, at *10 (S.D.N.Y. Oct. 16, 2012).").

contained in the policy, nor the separation of insureds doctrine, renders this exclusion ambiguous. The Separation of Insureds provision primarily highlights the named insured's separate rights and duties, as well as makes clear that the limits of the policy are to be shared by all of the insureds, *i.e.*, that they are not each able to exhaust the limits of coverage but must share that limit equally; it does not negate bargained-for exclusions, or otherwise expand, or limit, coverage."); *Endurance American Specialty Ins. Co. v Utica First Ins. Co.*, No. 6507032013, 2013 WL 11236210, at *2 (N.Y. Sup. Ct. Nov. 25, 2013) ("An employee exclusion that unambiguously excludes coverage is not rendered otherwise because of a policy provision applying the separation of insureds doctrine.") (citing *DRK, LLC v. Burlington Ins. Co.*).

Consequently, the "employee exclusion" in the subject policy excluded coverage for Buckingham relating to Hanson's injury, since Hanson was an employee of "any insured," namely, Haitz. Atlantic is therefore entitled to summary judgment.

## CONCLUSION

Buckingham is dismissed from the action since its claim is now moot. Defendant's Motion for Summary Judgment [#55] is granted, and Massachusetts Bay's Cross-motion for Summary Judgment [#74] is denied. The Clerk of the Court is directed to enter judgment for Defendant and close this action.

SO ORDERED.

Dated: Rochester, New York
January 8, 2020

ENTER:

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge